# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARVIN W. HAMM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-359-SPS |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Marvin W. Hamm requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 25, 1970, and was forty-one years old at the time of the administrative hearing (Tr. 80, 186, 194). He completed twelfth grade and has vocational training in welding, but has no past relevant work (Tr. 81, 103, 220). The claimant alleges he has been unable to work since January 7, 2008, due to depression and problems with his neck, lower back, right hand, right knee and heart (Tr. 219).

## Procedural History

On December 28, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, as well as supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 7, 2012 (Tr. 49-64). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he was limited to simple, repetitive tasks; could relate to supervisors and co-workers only superficially; and could

not work with the public (Tr. 56). The ALJ concluded that the claimant was not disabled because there was work in the national and regional economies that he could perform, *i. e.*, small product assembler and bakery worker (Tr. 21).

## Review

The claimant contends that the ALJ erred by failing to: (i) adopt limitations related to his severe hand impairments, (ii) properly analyze the medical and nonmedical source opinions, (iii) properly assess his credibility, (iv) properly consider his obesity, and (v) apply the doctrine of res judicata. The Court agrees that the ALJ failed to properly assess the medical evidence at step four, including the claimant's obesity, and the decision of the Commissioner is therefore reversed.

The ALJ determined that the claimant had the severe impairments of status post injuries to the right and left hands, chronic obstructive pulmonary disease (COPD) in smoker, history of low back pain, sleep apnea, obesity, and depression, as well as the nonsevere impairments of hypertension, high cholesterol, neck pain, history of right knee pain status postsurgery, the effect of medications on concentration and memory, and history of substance abuse (Tr. 52). The medical evidence reveals the claimant established care at Stigler Health and Wellness Center on May 21, 2008, and was diagnosed with, *inter alia*, obesity (Tr. 391). Dietetic technician Patsy Kates provided the claimant with nutritional counseling from October 22, 2008 through October 25, 2010 (Tr. 434, 437, 452, 459). On July 11, 2011, the claimant asked Lacy Conaway, a nurse practitioner, about an "hcg diet," she discussed different diet plans and approaches at

length with him, and recommended a weight loss diet (Tr. 678). Ms. Conaway diagnosed the claimant with obesity on October 20, 2011 (Tr. 683).

The record also reflects that the claimant repeatedly reported shortness of breath to his providers (Tr. 496, 498, 502, 508, 510, 676, 678, 682, 685, 689). Dr. Mazen Al-Hamwy conducted a stress test on July 27, 2011, which the claimant did not complete due to shortness of breath (Tr. 697, 679). Dr. Al-Hamwy assessed the claimant with dyspnea of noncardiac etiology, noting the claimant's weight gain was "most probably" the cause (Tr. 697). Pulmonary function studies performed on October 20, 2011, showed the claimant's FEV1 was 72% and his lung age was 78 (Tr. 699). Ms. Conaway diagnosed the claimant with COPD on January 12, 2012, and prescribed a daily use inhaler (Tr. 685). At a follow up visit with Ms. Conaway on June 4, 2012, the claimant reported no shortness of breath, but was still smoking daily (Tr. 692-93).

On November 15, 2011, Dr. Edgar Boyd conducted a sleep study on the claimant (Tr. 708-15). He diagnosed the claimant with mild obstructive sleep apnea and recommended a CPAP machine as well as weight loss (Tr. 710). The claimant began using a CPAP machine the first week of January, 2012 (Tr. 657).

Dr. Mohammed Quadeer performed a consultative examination of the claimant on February 15, 2011 (Tr. 513-21). He noted tenderness in the claimant's back at C5-C6 and L4-L5 with limited range of motion associated with muscle spasms, as well as limited range of motion in the claimant's neck (Tr. 515-16). Despite finding reduced grip strength in the claimant's right hand, Dr. Quadeer opined that the claimant could manipulate small objects (Tr. 519).

On March 24, 2011, state reviewing physician Dr. Luther Woodcock found the claimant could perform medium work (Tr. 550). Additionally, he indicated that the claimant could do unlimited reaching, but was limited in handling, fingering, and feeling due to decreased sensation and grip strength in the claimant's right hand (Tr. 552).

At the administrative hearing, the claimant testified that he could no longer work due to weight gain; swelling and pain in his feet, legs, and right knee; back problems; hand problems; depression; anxiety; headaches; and neck pain (Tr. 85-88). He also testified, *inter alia*, that he takes antidepressant medications which cause weight gain and decreased energy and that he doesn't want to be around people because of his anxiety (Tr. 87). As to his neck problems, he stated he has constant pain, reduced range of motion, and that it was likely the cause of his headaches (Tr. 88-89). As to his back pain, he testified he needs to lie flat for a few hours "usually everyday" to relieve his pain (Tr. 92-93).

In his written opinion, the ALJ provided a thorough summary of the claimant's hearing testimony, the other source evidence, and the medical evidence. At step two, he discussed the claimant's impairments, explaining those he deemed severe and not severe (Tr. 52-53). At step four, he noted the claimant's testimony, as well as the medical evidence related to the claimant's severe impairments (Tr. 58-60). The ALJ found the claimant could perform light work, stating that the claimant's obesity, hand weakness, and decreased grip strength necessitated a lighter exertional classification than found by the state reviewing physician; however, he otherwise adopted the state reviewing physician's opinion as to the claimant's functional limitations (Tr. 62-63).

Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* Soc. Sec. Rul. 02-1p, 2000 WL 628049 at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the Respiratory System references obesity and explains that "[t]he combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately." The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 3.00 Respiratory System, I. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2000 WL 628049, at *6 Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.*

The ALJ found at step two that the claimant's obesity was a severe impairment, summarized the evidence related to the claimant's obesity, and noted that the claimant could not perform medium work in part due to his weight; but, the ALJ failed to discuss whether the medical evidence or testimony demonstrated any additional or cumulative effects from his obesity at step four (Tr. 52-53, 60, 62-63). *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. Rul. 02-01p, 2000 WL 628049, at *1, *5-*6, *7;

*Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence); *Hamby v. Astrue,* 260 Fed. Appx. 108, 112 (10th Cir.2008) (discussing requirements of SSR 02–01p and finding that "the ALJ provided no discussion of the effect of obesity on Ms. Hamby's other severe impairments.") [unpublished opinion]. This was particularly important here, because Dr. Boyd opined that the claimant's weight contributed to his sleep apnea and Dr. Al-Hamway opined that the claimant's weight contributed to his shortness of breath (Tr. 660, 697). Given these medical opinions, the impact that obesity can have on the respiratory system, and the claimant's documented repeat problems related to shortness of breath and obstructive sleep apnea, the ALJ erred in his failure to address whether there are any additional or cumulative effects from the claimant's obesity at step four. *See* Soc. Sec. Rul. 02-1p, 2002 WL 346862881, at *5.

Furthermore, as noted by the claimant in his arguments related to obesity, the ALJ should have considered the combined effect of *all* the claimant's impairments, both severe and nonsevere, in assessing his RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In

sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Gtotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error.").

Accordingly, the decision of the Commissioner must be reversed and the case remanded for further analysis of the claimant's RFC, including all severe *and* nonsevere impairments, and whether they had any additional and cumulative effects. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**